TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
JAMES R. MacAYEAL (D.C. Bar # 474664)
jamie.macayeal@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources
    Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044 7611
Telephone:  (202) 616-8777

Attorneys for the United States

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES,<br><br>        Plaintiff,<br><br>    v.<br><br>THE BOEING COMPANY,<br><br>        Defendant. | Case No.<br><br><br>COMPLAINT |

     Plaintiff the United States of America ("United States"), by the authority of the Attorney General and at the request and on behalf of the Department of the Navy ("the Navy") acting under the authority of the President of the United States, alleges as follows:

STATEMENT OF THE CASE

     1.    This is a civil action against The Boeing Company ("Boeing") pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, ("CERCLA"), 42 U.S.C. § 9607, for the recovery of response costs incurred by the Navy, acting under delegated CERCLA authority

from the President of the United States, in connection with Installation Restoration Program ("IRP") Site 70 at the Naval Weapons Station Seal Beach ("NWS") in Seal Beach, California (the "Site"). The United States also seeks a declaratory judgment pursuant to Section 113(g) of CERCLA, 42 U.S.C. § 9613(g), as to the liability of Boeing to be binding in any subsequent action for the recovery of costs of removal and remedial action not inconsistent with the National Contingency Plan, 40 C.F.R. § 300.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607(a) and 9613.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 9613(b) because Boeing may be found and resides in this District.

THE DEFENDANT

4.      Boeing is a Delaware corporation with its principal place of business in Chicago, Illinois. Boeing is the successor to Rockwell International.

5.      In 1967, North American Rockwell ("NAR") was created through the merger of North American Aviation, Inc. ("NAA") and Rockwell Standard. In 1973, NAR changed its name to Rockwell International.

6.      Boeing acquired the aerospace and defense segment of Rockwell International in December 1996 and expressly assumed its liabilities. Boeing later sold the same assets to United Technologies, Inc. but has retained the liabilities. Boeing has also indemnified United Technologies, Inc. with respect to the purchase of the assets. Thus, Boeing is the successor to the liabilities of NAA/NAR associated with the Site.

GENERAL ALLEGATIONS

The Site

7.      The NWS was commissioned in 1944 to support the Pacific Fleet and consists of 5,000 acres in Seal Beach, California. The Site is an approximately 40 acre area within the NWS in the northwestern-most corner of the southern parcel of the NWS.

2

8.     Prior to 1962, the Site was undeveloped land.

9.     In April 1962, the Navy and the National Aeronautics and Space Administration ("NASA") entered into an agreement allowing NASA to use the Site for final assembly and testing of Stage II of the Saturn V Rocket. NASA then entered into contracts with NAA, the winning bidder, to assemble the Stage II at a facility to be provided by NASA.

10.    The contracts included the 1962 Facilities Use Letter Contract NAS7-90, and the 1963 Facilities Use Contract NAS7-90(F).

11.    The Facilities Use Letter Contract NAS7-90 provided, among other things, that NASA would deliver to NAA Government-owned facilities (property) for use during Stage II production. NASA chose the Site as the Stage II manufacturing location.

12.    NAA conducted operations at the Site from 1962 to 1967. After the 1967 merger that formed NAR, NAR assumed the obligations of NAA's contract with NASA.

13.    In 1969, the Saturn V Rocket transported the Apollo spacecraft on its journey to the moon, allowing man to land on the moon.

14.    NAR continued the operations at the Site until 1973 when the Saturn project was cancelled.

15.    NAA/NAR used trichloroethylene ("TCE") at the Site during operations. TCE is a chlorinated solvent and a volatile organic compound ("VOC").

16.    NAA/NA disposed of TCE during its operations. NAA/NAR used TCE to clean components and portions of the S-II during construction. NAA/NAR used a perimeter ditch system for surface water control and wastewater disposal. The unlined ditch received wash-water with spent TCE.  NAA/NAR stored TCE in a tank area with two 15,000-gallon TCE tanks. The tank area had secondary containment that drained into the adjacent ditch for the first year of operation. The ditch often had standing water.

3

17.     After the cancellation of the Saturn program in 1973, portions of the Site were used as office space for the Navy and a Department of Energy contractor. Portions were also used for small-scale plating operations between 1978 and 2002. No TCE was used at the facility after 1973 except for a small amount at a laboratory. The Site now consists of office buildings and parking facilities currently in use by the Navy. The majority of the former NAA/NAR production buildings, a tank farm and assorted storage tanks and piping systems have been demolished.

Response Action and Enforcement History

18.     Department of Defense policy requires the Navy to identify, evaluate, and respond to the release or threat of release of hazardous substances, pollutants, or other contaminants into the environment from Navy facilities. DOD Instruction 4715.07, Defense Environmental Restoration Program (DERP) at 2 (August 31, 2018). When the Navy takes such response actions, it is acting under delegated authority from the President of the United States granted in Section 104 of CERCLA, 42 U.S.C. § 9604.

19.     The Navy's first investigation of the Site consisted of the Preliminary Assessment ("PA") from 1993 to 1995. The PA identified eleven Areas of Concern ("AOCs"), including Buildings 112, 128, and the Tank Farm (and associated process piping). The Navy found residual TCE and chromate-containing water in industrial waste pipelines, tanks and associated process piping, and equipment in the basement of Building 112 and the Tank Farm.

20.     In 1996, the Navy conducted a Removal Site Evaluation ("RSE") of ten of the eleven AOCs recommended for further investigation and confirmed that VOCs and/or metals contamination was present at those areas and was likely to have an adverse impact on human health and the environment.

21.     The Navy then removed industrial wastewater pipe, tanks and piping and removed contaminated groundwater in a basement area.

22.     From 1997 to 1999, the Navy conducted an Extended Removal Site Evaluation ("ERSE") to delineate the vertical and lateral extent of contaminants of

4

concern in soils and groundwater, refining geological and hydrological information and evaluating the potential threat to human health and the environment. After the ERSE, investigations focused on identifying the level and extent of groundwater contamination, especially VOCs, through groundwater monitoring. The Navy also conducted pilot and pumping tests to evaluate the effectiveness of pump and treat technologies. The groundwater associated with the Site is contaminated with TCE.

23.     Following these pilot tests, in 2002, the Navy prepared a Final Groundwater Feasibility Study ("FS") to evaluate different remedial approaches for contaminated groundwater associated with the Site. The FS identified ten alternatives, including Alternative 9, consisting of in situ treatment by chemical oxidation, a pump and treat program to provide both hydraulic containment and mass removal of the dissolved plume of contamination, and monitored natural attenuation and institutional controls to deal with residual contamination.

24.     The California Department of Toxic Substances Control ("DTSC") and the Santa Ana Regional Water Quality Control Board ("RWQCB") have exercised oversight over the Navy, in its capacity as the owner of the Site, to address the contamination at the facility.

25.     In 2005, the Navy prepared a Revised Groundwater FS that developed and re-evaluated five of the alternatives in the 2002 Final Groundwater Feasibility Study and added a new alternative (Alternative 11). The Navy ultimately recommended Alternative 11, consisting of in-situ treatment of both the source area and the dissolved plume area with follow-on groundwater monitoring and monitored natural attenuation. DTSC and RWQCB concurred with the Navy's decision selecting Alternative 11 in a final Record of Decision (ROD) on September 25, 2006 and October 3, 2006, respectively.

26.     Physical construction of the final groundwater remedy has been completed. Active Operation and Maintenance and periodic injection activities are currently ongoing and are expected to continue until approximately 2026. Monitored

5

natural attenuation and performance monitoring activities are expected to continue until 2061.  Long term monitoring is expected to occur from 2061 to 2071.

27.     The Navy has incurred at least $32 million in response costs associated with the Site.

<u>Statutory Background</u>

28.     Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section
>
> (1) the owner and operator of a . . . facility,
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> *  *  *
>
> from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . .

29.     Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), provides that the term "facility" means:

> any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

30.     Section 101(29) of CERCLA provides that the term "disposal" has "the meaning provided in section 1004 of the Solid Waste Disposal Act [42 U.S.C. §§

6

6903].” 42 U.S.C. § 9601(29). Section 1004 of the Solid Waste Disposal Act defines “disposal” as: “the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.” 42 U.S.C. § 6903(3).

31.     TCE is a hazardous substance under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); *see* 40 C.F.R. § 302.4.

32.     Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), provides that in an action for cost recovery of removal or remedial costs, a “court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.”

FIRST CLAIM FOR RELIEF
(Cost Recovery under Section 107 of CERCLA)

33.     Paragraphs 1 through 32 are re-alleged and incorporated by reference.

34.     The Site, as well as associated contamination, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

35.     There have been releases and threatened releases of "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at and from the Site.

36.     The releases and threatened releases of hazardous substances at and from the Site have caused and continue to cause the United States, acting under the CERCLA authority of the President, to incur costs to conduct response actions at the Site, including, but not limited to, studies, investigations, oversight, enforcement and indirect costs. The costs are not inconsistent with the NCP.

37.     During the time that NAA/NAR operated at the Site, the disposal of hazardous substances occurred at the Site.

7

38.     As the operator of a facility at the time of disposal of hazardous substances, from which facility there has been a release or threatened release of a hazardous substance, that led to the incurrence of response costs, NAA/NAR is liable for all such costs under Sections 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2). Boeing is liable as the successor to NAA/NAR.

SECOND CLAIM FOR RELIEF
(CERCLA Declaratory Judgment)

39.     Paragraphs 1 through 38 are re-alleged and incorporated by reference.

40.     Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), a declaratory judgment should be entered against Boeing declaring that it is liable and that the declaration of liability will be binding in any subsequent action for the recovery of response costs not inconsistent with the NCP incurred by the United States.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States prays that the Court:

1.     Enter judgment against the Defendant and in favor of the United States, for all costs incurred in response to the release or threat of release of hazardous substances at and from the Site, plus interest;

2.     Enter a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that the Defendant is liable that will be binding in a subsequent action for future response costs to be incurred by the United States in connection with the Site not inconsistent with the National Contingency Plan;

3.     Award court costs to the United States; and

4.     Grant such other relief as this Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

    /s/ James R. MacAyeal
JAMES R. MacAYEAL (D.C. Bar # 474664)
jamie.macayeal@usdoj.gov
Environmental Enforcement Section
Environment and Natural Resources
        Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044 7611
Telephone:  (202) 616-8777
Facsimile:    (202) 514-2427

OF COUNSEL:

RICHARD L. GREEN
Assistant Director
(Affirmative Environmental Restoration Claims)
Department of the Navy
Office of General Counsel Naval Litigation Office
720 Kennon Street SE, Bldg. 36, Rm. 233
Washington Navy Yard, D.C.  20374