1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    UNITED STATES OF AMERICA,          CASE NO. C22-0485JLR

11                     Plaintiff,        ORDER

              v.

12

      THE BOEING COMPANY,

13

                     Defendant.

14

15              I.      INTRODUCTION

16    Before the court is Defendant The Boeing Company's ("Boeing") motion to

17    dismiss.  (MTD (Dkt. # 30)[1]; Reply (Dkt. # 41).)  Plaintiff the United States of America

18    (the "Government") opposes the motion.  (Resp. (Dkt. # 39).)  Boeing has also filed a

19    separate request that the court take judicial notice of or incorporate by reference sixteen

20

---

21    [1] Boeing first filed a redacted version of its motion (*see* Dkt. # 29), then filed an
      unredacted version under seal (*see* Dkt. # 30), and the court later granted the parties' stipulated
      motion to unseal the motion (*see* 9/26/22 Order (Dkt. # 40)).  In this order, the court cites the
22    un-sealed, unredacted version of Boeing's motion to dismiss.  (*See* MTD.)

ORDER - 1

1    documents in its consideration of the instant motion.  (Req. (Dkt. # 31); *see also* 6/21/22

2    King Decl. (Dkt. # 32) (identifying documents subject to the request).)  The Government

3    did not file a separate opposition to this request but opposes the court's consideration of

4    any documents beyond the complaint.  (*See* Resp. at 22 n.12; Dkt.)  The court has

5    reviewed the parties' submissions, the balance of the record, and relevant law.  Being

6    fully advised,[2] the court GRANTS in part and DENIES in part Boeing's request for

7    judicial notice and DENIES Boeing's motion to dismiss.

## II.    BACKGROUND

9        The Government brings this action for damages and declaratory relief against

10   Boeing to recover costs for environmental remediation measures at a site where Boeing's

11   predecessor operated.  (*See* Compl. (Dkt. # 1) ¶ 2.)  Below, the court sets forth the factual

12   and procedural background relevant to Boeing's motion to dismiss.

13       In 1962, the United States Navy and National Aeronautics and Space

14   Administration ("NASA") contracted with North American Aviation, Inc. ("NAA") to

15   assemble and test the Saturn V Rocket, which would later land on the moon.  (Compl.

16   ¶¶ 5, 9, 12-13.)  This work took place at the Naval Weapons Station Seal Beach in

17   California ("the Site").  (*Id.* ¶ 1.)  NASA and NAA entered a series of contracts

18   (collectively, "the Agreements") governing NAA's work on the Saturn V Rocket,

19   including a Facilities Contract that governed the acquisition, installation, and use of the

20

21
         [2] Both parties request oral argument (*see* MTD, Resp.), but the court concludes that oral
     argument would not be helpful in its disposition of the motion, *see* Local Rules W.D. Wash.
22   LCR 7(b)(4).

1  Site.  (*See* Compl. ¶ 9-11; MTD at 3; King Decl. (Dkt. # 32) ¶ 2, Ex. A ("Facilities

2  Contract") [3])  According to Boeing, the Facilities Contract contains a "Facilities Clause"

3  in which NASA agreed to indemnify or hold harmless NAA for damage to the facilities.

4  (MTD at 5-7, 11-16.)

5        In 1967, NAA merged with Rockwell Standard to create North American

6  Rockwell ("NAR"), which assumed NAA's obligations under its contract with NASA.

7  (*Id*. ¶¶ 5, 12.)  NAR continued work on the Saturn V Rocket until 1973, when the project

8  was cancelled.  (*Id*. ¶ 14.)  In 1996, Boeing acquired NAR's aerospace and defense

9  assets, as well as its liabilities.  (*Id*. ¶ 6.)  Although Boeing later sold the assets, the

10  Government asserts that it retained the liabilities.  (*Id*.)

11        The Navy is responsible for identifying, evaluating, and responding to

12  contaminants released into the environment from its facilities, including the Site.  (*Id*.

13  ¶ 18.)  In the 1990s, the Navy began to identify contaminated groundwater in and around

14  the Site.  (*See id*. ¶¶ 19-22.)  The Navy conducted groundwater monitoring and pilot tests

15  for certain treatments between 1995 and 1997.  (*Id*. ¶ 22.)  According to the Government,

16  NAA and NAR used and disposed of trichloroethylene ("TCE"), a "chlorinated solvent

17  and a volatile organic compound" at the Site during its work on the Saturn V Rocket.  (*Id*.

18  ¶¶ 15-16.)  As a result of NAA and NAR's wastewater disposal techniques, the

19  Government alleges, the groundwater near the Site is contaminated with TCE.  (*Id*. ¶¶ 16,

20

21

22        [3] The court takes judicial notice of the Facilities Contract because it is a government record whose "accuracy cannot reasonably be questioned."  *See* Fed. R. Evid. 201(b).

ORDER - 3

1   22, 37-38.)  Since the cancellation of the Saturn V program in 1973, no TCE has been

2   used at the Site aside from a small amount at a laboratory.  (*Id.* ¶ 17.)

3          In 2002, the Navy prepared a Final Groundwater Feasibility Study to evaluate

4   different remedial approaches for contaminated groundwater.  (*Id.* ¶ 23.)  In 2005, the

5   Navy revised its 2002 Feasibility Study and added a new alternative remedial approach,

6   Alternative 11.  (*Id.* ¶ 25.)  The Navy recommended Alternative 11 to the state and local

7   entities that have exercised oversight over the Navy's efforts to address the TCE

8   contamination at the Site.  (*Id.* ¶¶ 24-25.)  The state and local entities concurred with the

9   Navy's selection and formally adopted the final remedial action plan on September 25,

10  2006 and October 2, 2006.  (*Id.* ¶ 25; King Decl. ¶ 10, Ex. I ("ROD")[4].)  The Navy has

11  completed construction of the final groundwater remedy and expects remediation

12  activities to continue until approximately 2026 and monitoring activities to continue until

13  2071.  (Compl. ¶ 26.)  The Navy has incurred at least $32 million in response costs

14  associated with the Site.  (*Id.* ¶ 27.)

15         In September 2012, the Government notified Boeing that it had a cause of action

16  against Boeing under the Comprehensive Environmental Response Compensation and

17  Liability Act, 48 U.S.C. § 9607(a) ("CERCLA").  (*See* King Decl. (Dkt. # 32) ¶ 13, Ex. L

18  ("Initial Tolling Agreement").)  The parties entered tolling agreements that ultimately

19  tolled the running of the statute of limitations from September 12, 2012, through April

20

---

21         [4] According to the complaint, the local entity formally adopted the remedial action plan
    on October 3, 2006, by signing the ROD.  (Compl. ¶ 25.)  However, the local entity signed the
    ROD on October 2, 2006.  (*See* ROD at 8.)  The court takes judicial notice of the ROD and of the
22  October 2, 2006 adoption date.  *See* Fed. R. Evid. 201(b).

1    15, 2022, inclusive.  (*See* Initial Tolling Agreement; King Decl. ¶ 14, Ex. M ("Second

2    Tolling Agreement").)  On January 14, 2022, the Government sent Boeing a letter

3    indicating its intent to file the instant lawsuit.  (King Decl. ¶ 15, Ex. N ("Termination

4    Letter").)[5]  The Termination Letter gave Boeing until February 7, 2022, to make a

5    settlement offer and terminated the parties' tolling agreement, effective February 14,

6    2022.  (Termination Letter at 2.)  Boeing did not make a settlement offer, and the

7    Government commenced this action for damages and declaratory relief on April 12,

8    2022.  (*See* Compl.)  Boeing filed the instant motion to dismiss and a separate request for

9    judicial notice or incorporation by reference of Exhibits A-O of the King Declaration on

10   June 21, 2022.  (*See* MTD; Req.)  This case was transferred from the Honorable Judge

11   Lauren King to the undersigned on March 20, 2023.  (*See* Dkt.)

### III.    ANALYSIS

13       The court first reviews the legal standard for a motion to dismiss before turning to

14   Boeing's motion.

### A.    Legal Standard for a Motion to Dismiss

16       Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

17   "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

18   Under this standard, the court construes the claim in the light most favorable to the

19   nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946

20

21   _____

    [5] The court takes judicial notice of the Initial Tolling Agreement, the Second Tolling
22   Agreement, and the Termination Letter.  (King Decl. ¶¶ 13-15, Exs. L-M); *see* Fed. R. Evid.
     201(b).

1   (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter, accepted

2   as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S.

3   662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The

4   court need not accept as true legal conclusions, "formulaic recitation[s] of the legal

5   elements of a cause of action," *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir.

6   2012), or "conclusory allegations that are contradicted by documents referred to in the

7   complaint," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.

8   2008).  "A claim has facial plausibility when the plaintiff pleads factual content that

9   allows the court to draw the reasonable inference that the defendant is liable for the

10  misconduct alleged." *Iqbal*, 556 U.S. at 678.

11          Boeing urges the court to dismiss this action with prejudice for two reasons:  first,

12  the "Facilities Clause" in the Facilities Contract bars this suit; and second, the

13  Government's suit is untimely.  (MTD at 1.)  The Government opposes the motion.  (*See*

14  *generally* Resp.)  The court reviews each argument below.

15  **B.      Whether the Parties' Contract Bars this Action**

16          Boeing argues that the Facilities Clause in the underlying contract between NAA

17  and NASA bars the Government's CERCLA action entirely.  (*See* MTD at 10-16.)

18  Boeing argues that CERCLA expressly permits potentially responsible parties to shift

19  liability, including in contracts that pre-date the statute.  (*Id*. at 10 (citing 42 U.S.C.

20  § 9607(e)(1)); Reply at 1.)  In response, the Government argues that a contractual

21  obligation is not an enumerated defense to CERCLA liability.  (*See* Resp. at 7 (first citing

22  *Cal. ex. rel. Cal. Dept. of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661,

1    672-73 (9th Cir. 2004); and then citing *United States v. Newmont USA Ltd.*, No.

2    CV-05-20, 2007 WL 2477361, at *4 (E.D. Wash. Aug. 28, 2007)).)  The Government

3    argues further that § 9607(e)(1) allows for agreements between responsible parties to

4    shift or allocate costs among themselves, but does not recognize such agreements as

5    defenses to liability and expressly prohibits a potentially responsible party from

6    transferring liability to another party.  (Resp. at 7-8.)

7          Boeing replies that it "has never argued that the Facilities Clause extinguishes or

8    excuses potential CERCLA liability," but instead raises the Facilities Clause as "an

9    enforceable promise as to who bears the cost of liability," permitted by the statute.

10   (Reply at 1 (emphasis removed) (citing 42 U.S.C. § 9607(e)).)  According to Boeing,

11   CERCLA distinguishes hold-harmless and indemnity agreements from the statute's

12   affirmative defenses and courts enforce such agreements to indemnify or hold harmless a

13   party for its obligations under CERCLA.  (*See* MTD at 10, 13-15; Reply at 1-2.)

14         CERCLA's provision regarding hold-harmless agreements states as follows:

15         No indemnification, hold harmless, or similar agreement or conveyance shall
           be effective to transfer from the owner or operator of any . . . facility or from

16         any person who may be liable for a release . . . under this section, to any other
           person the liability imposed under this section.  Nothing in this subsection

17         shall bar any agreement to insure, hold harmless, or indemnify a party to such
           an agreement for any liability under this section.

18
     42 U.S.C. § 9607(e)(1).  The Ninth Circuit interprets this "truly murky" provision to

19
     permit private agreements apportioning CERCLA costs between responsible parties,

20
     *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 692 (9th Cir.

21
     1992), provided the agreements "cannot alter or excuse the underlying liability . . . [or]

22

ORDER - 7

1   prejudice the right of the government to recover cleanup or closure costs from any

2   responsible party," *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1459 (9th Cir.

3   1986).  In so holding, the Ninth Circuit is in good company.  *See, e.g., John S. Boyd Co.,*

4   *Inc. v. Boston Gas Co.*, 992 F.2d 401, 405 (1st Cir. 1993) (describing agreements

5   contemplated by § 9607(e)(1) as "tangential to the enforcement of CERCLA"); *Olin*

6   *Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 14 (2d Cir. 1993) (adopting the district

7   court's conclusion that, "under CERCLA private parties may contract with respect to

8   indemnification and contribution but . . . all responsible parties remain fully liable to the

9   government.")); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 210-11 (3d Cir. 1994)

10  ("agreements to indemnify or hold harmless are enforceable between the parties but not

11  against the government.") (internal quotation marks omitted); *U.S. v. Lowe*, 29 F.3d

12  1005, 1010 (5th Cir. 1994) ("Obviously, indemnification does not relieve [the corporate

13  officer] of his liability vis-à-vis the government; it only provides a possible source of

14  payment for damages resulting from that liability."); *Niecko v. Emro Mktg. Co.*, 973 F.2d

15  1296, 1300-01 (6th Cir. 1992) (interpreting § 9607(e)(1) to impose joint and several

16  liability on all parties involved but prohibiting the transfer of liability "[w]here the

17  claimant is the government").

18        In its reply, Boeing asserts that the distinction between permissible agreements

19  that apportion costs between parties and impermissible agreements that transfer liability

20  does not apply here, where the CERCLA litigation is between the same parties that

21  entered into the hold-harmless agreement.  (Reply at 1-2.)  But Boeing does not identify

22  any controlling authority that disregards this distinction endorsed by most Circuit Courts

1    of Appeal, even where, as here, the only parties to the CERCLA litigation were the

2    Government and its contractors.  (*See generally id*.; MTD.)

3            Boeing relies extensively on *Shell Oil Co. v. United States*, 751 F.3d 1282,

4    1288-89 (Fed. Cir. 2014) for the position that hold-harmless agreements can shield

5    contractors from CERCLA liability in suits brought by the Government.  (MTD at

6    14-16.)  In that case, however, the companies sued the government for reimbursement of

7    CERCLA cleanup costs pursuant to a contract after a district court determined their

8    liability under CERCLA in separate proceedings.  *See Shell Oil*, 751 F.3d at 1288-89

9    (describing CERCLA proceedings).  The district court determined CERCLA liability and

10   then transferred the oil companies' breach of contract claim against the government to the

11   Federal Court of Claims.  *Id*. at 1289.  There, the oil companies voluntarily dismissed

12   their complaint and exhausted administrative remedies, as required by the Contract

13   Settlement Act, before filing a new lawsuit over the contract claim.  *Id*.  Boeing does not

14   identify any authority in the plethora of opinions in the *Shell Oil* litigation endorsing

15   Boeing's theory that a hold-harmless agreement "shields [a party] from CERCLA

16   liability" in an action brought by the government.  (MTD at 10); *see generally Shell Oil*,

17   751 F.3d 1282; *see also United States v. Shell Oil Co.*, 294 F.3d 1045, 1048 (9th Cir.

18   2002) (affirming oil companies' liability under CERCLA).[6]

19

20
        _____

        [6] For the same reasons, Boeing's reliance on *Ford Motor Co.* is also misplaced.  (*See*
21   MTD at 14-15 (citing *Ford Motor Co. v. United States*, 378 F.3d 1314, 1319 (Fed. Cir. 2004)));
     *see Ford Motor Co.*, 378 F.3d at 1315-16 (construing indemnification clause in government
     contract in the Federal Court of Claims pursuant to the Contract Settlement Act in proceedings
22   wholly separate from the arbitration regarding Ford's liability under CERCLA).

1    The other cases Boeing cites construe contractual provisions regarding the

2 allocation of CERCLA costs between private parties; none construes such a provision to

3 bar CERCLA liability in an action by the government.  (*See* MTD at 14-15.)  The only

4 case Boeing cites that endorses its position that a hold-harmless provision in a contract

5 may affirmatively absolve a private company of liability under CERCLA is an

6 unpublished decision from the Western District of Texas.  (*See* MTD at 14 (citing *United*

7 *States v. ConocoPhillips Co.*, No. Civ. A. W-11-CV-167, 2012 WL 4645616, at *5 (W.D.

8 Tex. Sept. 30, 2012)).)  That court, however, did not consider § 9607(e)(1) or any of the

9 cases interpreting it, *see generally ConocoPhillips*, 2012 WL 4645616, and its conclusion

10 may contravene Fifth Circuit precedent, *see Lowe*, 29 F.3d at 1010 ("Obviously,

11 indemnification does not relieve [the corporate officer] of his liability vis-à-vis the

12 government; it only provides a possible source of payment for damages resulting from

13 that liability.").

14    In light of the weight of authority holding that agreements to indemnify or hold

15 harmless are not enforceable against the Government, however, the court respectfully

16 disagrees with the conclusion the *ConocoPhillips* court reached.  Accordingly, the court

17 DENIES Boeing's motion to dismiss with respect to its argument that the Facilities

18 Clause bars the Government's lawsuit.

19 **C.**    **Whether the Action is Time-Barred**

20    Boeing argues that the Government's complaint is untimely because the cause of

21 action accrued more than six years before the Government filed its complaint, excluding

22 the period subject to the parties' tolling agreements.  (MTD at 16-24.)  The Government

1    responds that Boeing's statue-of-limitations defense cannot be resolved on a motion to

2    dismiss because it relies on facts not evident from the face of the complaint, and in the

3    alternative, the Government argues the action is timely.  (Resp. at 20-22.)  The court first

4    reviews the legal standard governing a statute-of-limitations defense before turning to

5    Boeing's arguments.

6        1.  Legal Standard for a Statute-of-Limitations Defense.

7        "A statute-of-limitations defense, if 'apparent from the face of the complaint,' may

8    properly be raised in a motion to dismiss."  *Seven Arts Filmed Ent. Ltd. v. Content Media*

9    *Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quoting *Conerly v. Westinghouse Elec.*

10   *Corp.*, 623 F.2d 117, 119 (9th Cir. 1980)).  However, "[w]hen a motion to dismiss is

11   based on the running of the statute of limitations, it can be granted only if the assertions

12   of the complaint, read with the required liberality, would not permit the plaintiff to

13   prove" that the statute has not run.  *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th

14   Cir. 1980).  A "limitations period commences when the plaintiff has 'a complete and

15   present cause of action.'"  *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v.*

16   *Ferbar Corp. of California*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S.

17   96, 98 (1941)).  If the complaint is filed after the limitations period has expired, subject to

18   any tolling agreements between the parties, the action is untimely, and the court must

19   dismiss the complaint.  *See Seven Arts*, 733 F.3d at 1254.

20       As a preliminary matter, the parties agree that pursuant to their tolling agreements

21   and the date the Government filed the complaint, this action should be treated as though it

22

ORDER - 11

1   were filed on November 11, 2012.  (Resp. at 21, Reply at 11.)  The court agrees.[7]  Thus,

2   the action is timely if the Government's cause of action accrued after November 11,

3   2006.  The court must therefore determine when the Government's cause of action

4   accrued.

5       2.  When the Cause of Action Accrued.

6           CERCLA provides that a plaintiff seeking to recover remedial costs must file suit

7   "within 6 years after initiation of physical on-site construction of the remedial action."

8   42 U.S.C. § 9613(g)(2)(B).  The Ninth Circuit construes "remedial action" in this context

9   to mean "action consistent with the final remedy," which is "action taken *after* the final

10  remedial action plan has been approved."  *Neville*, 358 F.3d at 667-69, 671 (emphasis in

11  original).  Thus, a cause of action to recover remedial costs under CERCLA accrues after

12  the final remedial action plan is adopted, when on-site construction of the remedy

13  consistent with that plan commences.  *See id*. at 669.  Thereafter, the plaintiff must file

14  suit within six years.  *See id.;* 42 U.S.C. § 9613(g)(2)(B); *Calif. River Watch v. Fluor*

15  *Corp.*, 139 F. Supp. 3d 1027, 1029-30 (N.D. Cal. 2015) (rejecting argument that on-site

16  remedial work performed prior to the adoption of the final remedial action triggered

17  statute of limitations); *see also City of Moses Lake v. United States*, 458 F. Supp. 2d

18  1198, 1215 (E.D. Wash. 2006) (determining limitations period began after the city

19  adopted its final remedial action plan).

20

21  [7] The tolling agreements were in effect from September 17, 2012 through February 14, 2022 inclusive (*see* Initial Tolling Agreement; Second Tolling Agreement; Termination Letter) for a total of 3,439 days.  The Government filed the action on April 12, 2022 (*see* Compl.), and

22  3,439 days before April 12, 2022 is November 11, 2012.

1        Boeing argues that under *Neville*, the Government's cause of action accrued on

2    August 15, 2006, when the Navy issued its final remedial action plan recommending

3    Alternative 11 for the state and local entities' approval (the "selection date").  (MTD at

4    19-23; Reply at 10-12.)  In the alternative, Boeing argues the limitations period began

5    when the state and local entities formally adopted the final remedial action plan on

6    September 25, 2006 and October 2, 2006, and that the limitations period began on one of

7    those two dates (the "formal adoption" dates).  (*See* MTD at 23-24; Compl. ¶¶ 24-25;

8    ROD at 8).  Under either theory, Boeing argues that the selection date or the formal

9    adoption dates are sufficient to commence the limitations period under *Neville* because at

10   least some of the Navy's prior, on-site remedial activity was ultimately consistent with

11   the final remedial action plan.  (MTD at 21; Reply at 11.)  The Government responds that

12   the limitations period commenced upon on-site construction of remedial activity after the

13   October 2006 "final adoption" of the remedial action plan.  (Resp. at 21-22 (citing

14   *Neville*, 358 F.3d at 663).)

15       The Government's legal theory is consistent with *Neville* and the language of the

16   statute, whereas Boeing's is not.  Under Boeing's reading, once a final remedial action

17   plan exists, any prior construction consistent with that plan satisfies the statute's on-site

18   construction requirement, such that the adoption of the remedy, rather than the on-site

19   construction, triggers accrual of the action.  (*See* MTD at 21 (arguing that "the inquiry

20   here is when the remedy was selected for [the Site], such that the Navy knew its prior

21   construction was 'remedial action' that triggered accrual.").)  But this reading inverts

22   *Neville*'s clear holding that "[f]or an action to be consistent with the permanent remedy, a

1    permanent remedy must already have been adopted," *Neville*, 358, F.3d at 667, and

2    frustrates CERCLA's language that the limitations period commences upon "initiation of

3    physical on-site construction," 42 U.S.C. § 9613(g)(2)(B).  *See also Fluor Corp.*, 139 F.

4    Supp. 3d at 1029-30 (rejecting similar argument).  The court declines to adopt Boeing's

5    theory with respect to when the Government's cause of action accrued as inconsistent

6    with applicable law.

7         Therefore, to resolve Boeing's statute-of-limitations defense, the court must

8    determine when on-site construction consistent with the final remedy began, after the

9    final remedial action plan was adopted.  *See Neville*, 358 F.3d at 669.  The Government's

10   action is untimely if that construction began on or before November 11, 2006.  (*See supra*

11   § III.D.1.)  However, nothing on the face of the complaint or within any documents

12   subject to judicial notice indicates when on-site construction of remedial action consistent

13   with the final remedy commenced.[8]  (*See generally* Compl.)  Construing the complaint's

14   factual allegations in the Government's favor, the court concludes that the Government

15

16        [8] The Government asserts that on-site construction began "in 2007," as corroborated by portions of the Navy's Final Technical Memorandum ("the Memorandum") that Boeing
17   excluded when it attached excerpts of the document as Exhibit O to the King Declaration.  (*See* Resp. at 28-29; Reese Decl. (Dkt. # 39-1) ¶ 6 ("The portions omitted from Exhibit O to the
18   Marten King Declaration show that the field work for construction of the wells is dated 2007").) Although the Government attaches a complete copy of the Memorandum, it states that it does so
19   only for completeness and opposes the court's consideration of materials beyond the complaint. (Resp. at 22 n.12 (citing Fed. R. Evid. 106); Reese Decl. ¶ 6, Ex. A.)  In its reply, Boeing does
20   not respond to this argument or address its inclusion of an incomplete copy of the Memorandum. (*See* Reply.)  The court declines to take judicial notice of the incomplete copy of the
21   Memorandum supplied by Boeing, and no party has requested that the court take judicial notice of the Government's complete copy.  (*See id*.; Resp); *see also Khoja v. Orexigen Therapeutics,*
22   *Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (concluding judicial notice is improper where "there is a reasonable dispute as to what the [document] establishes.").

1  may be able to show that the statute of limitations did not expire before it filed suit.  *See*

2  *Jablon*, 614 F.2d at 682.  Boeing's statue-of-limitations defense is thus inappropriate for

3  resolution on a motion to dismiss.  *See id*.  The court DENIES Boeing's motion to

4  dismiss the action as untimely.

## IV.    CONCLUSION

6      For the foregoing reasons, the court GRANTS in part and DENIES in part

7  Boeing's request for judicial notice (Dkt. # 31) and DENIES Boeing's motion to dismiss

8  (Dkt. # 30).

9      Dated this 25th day of April, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 15